UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JON MCDONOUGH and TRACY A.
MCDONOUGH,

           Plaintiffs,

v.

CYCLING SPORTS GROUP, INC.,
CANNONDALE CORPORATION, and
ADVANCED INTERNATIONAL
MULTITECH CO. LTD.,

           Defendants.
_____

**DECISION AND ORDER**

6:18-CV-06327 EAW



## INTRODUCTION

Plaintiffs Jon McDonough and Tracy A. McDonough (collectively "Plaintiffs") commenced the instant action in state court on March 14, 2018, alleging causes of action sounding in products liability, breach of warranty, negligence, and loss of consortium relating to injuries allegedly sustained in a biking accident on May 2, 2015. (Dkt. 1-2). The matter was removed to this Court on April 30, 2018. (Dkt. 1).

Four motions are currently pending before the Court: (1) Defendant Advanced International Multitech Co. LTD's ("AIM") motion for summary judgment based on lack of personal jurisdiction (Dkt. 24); (2) Plaintiffs' cross-motion for jurisdictional discovery (Dkt. 32); (3) Defendant Cycling Sports Group, Inc.'s ("CSG") motion for leave to file an amended answer with a cross-claim against AIM (Dkt. 39); and (4) CSG's unopposed

-1-

motion for leave to file a third-party complaint (Dkt. 47). For the reasons that follow, the Court grants Plaintiffs' cross-motion for jurisdictional discovery and denies without prejudice to renewal AIM's motion for summary judgment. The Court grants CSG's request to withdraw its motion for leave to file an amended answer and for leave to file a third-party complaint (*see* Dkt. 53), and accordingly terminates those motions.

## BACKGROUND

### I. Factual Background

Plaintiffs allege that on May 2, 2015, at approximately 8:30 a.m., Plaintiff Jon McDonough was riding a Cannondale bicycle on Palmer Road in the Town of Riga, New York, when a component known as the "cycling fork" failed, causing the front wheel to separate from the rest of the bicycle, and resulting in Mr. McDonough being violently thrown to the pavement and injured. (Dkt. 1-2 at 21-22). According to the Complaint, AIM manufactured the defective cycling fork, which Cannondale/CSG incorporated into the bicycle. (*Id.* at 16-20).

The Complaint alleges that AIM is a "foreign business entity organized and existing under and by virtue of the laws of a nation or a territory other than a state of the United States." (*Id.* at 11). The Complaint further alleges that AIM is "in the business of designing, manufacturing, advertising, marketing and selling bicycle components for use by consumers," and that in furtherance of that business, AIM "did transact business within the State of New York, and contracted to supply goods and services in the State of New York." (*Id.* at 14-15). In addition, the Complaint alleges that Plaintiffs' claims arise out

of AIM having committed "a tortious act without the State of New York that caused injury within the State of New York," and that AIM should have reasonably expected those tortious acts to have consequences in the State of New York. (*Id.* at 15-16). Plaintiffs further claim that AIM "regularly does or solicits business or engages in a persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the State of New York," and that AIM "derive[s] substantial revenue from interstate or international commerce." (*Id.*).

In support of its motion for summary judgment, AIM has submitted a declaration from Sunny Cheng, its general manager. (Dkt. 24-4). Mr. Cheng states, under penalty of perjury, that AIM is a manufacturer of, among other things, bicycle components. (*Id.* at 1). He further states that AIM is "a Taiwanese entity that was created in Taiwan and which maintains its principal place of business in Kaohsiung City, Taiwan." (*Id.* at 2). Mr. Cheng indicates that the cycling fork at issue in this litigation was sold by AIM to a "third-party trading company," and that while AIM was "aware that the third-party trading company was distributing the subject cycling fork to the United States for use as a bicycle component," it was not aware that the cycling fork would be sold to a customer in the State of New York. (*Id.* at 2-3). According to Mr. Cheng, AIM has never commenced any lawsuits in New York, has no bank accounts, phone listings, or assets in New York, owns no real or personal property in New York, has no subsidiaries or offices in New York, and has never been required to pay taxes in New York. (*Id.* at 3). Further, Mr. Cheng states that AIM does not directly distribute its products to retail customers in New York, has no

contracts with any companies in New York for the purchase of its products, does not generate any revenue "from any sale of its products to retail customers" in New York, does not have employees in New York or send representatives to New York to engage in business transactions, does not advertise in New York, and does not sell its products over the internet. (*Id.* at 3-4).

In opposition to AIM's motion for summary judgment, Plaintiffs and CSG submitted evidence related to Mr. Cheng's statements. Plaintiffs submitted evidence tending to show that CSG has a network of 80 dealers in New York, that AIM itself (and not a third-party trading company) directly shipped components to CSG on numerous occasions, and that AIM's website describes AIM as a "worldwide corporation" and "one of the top manufacturers worldwide" of various products. (Dkt. 29-5; Dkt. 29-7; Dkt. 29-8; Dkt. 29-9; Dkt. 29-10).

CSG submitted a declaration from David Campbell, its Director of Technical Services. (Dkt. 28 at 7-9). Mr. Campbell states, under penalty of perjury, that CSG is one of the largest bicycle companies in the world and that New York State is currently the largest market in the United States for its bicycles. (*Id.* at 7-8). Mr. Campbell explains that CSG has incorporated cycling forks manufactured by and purchased from AIM into its bicycles since at least 1997, "including some forks AIM modified specifically for CSG bicycles," and that during the relevant time period, "AIM became CSG's primary fork vendor for road bicycles." (*Id.* at 8). Mr. Campbell further indicates that while CSG did often use a trading company called Cash Crest to facilitate its purchases from AIM, Cash

Crest "told AIM that they were working as CSG's agent in Taiwan to purchase a variety of its forks to incorporate into CSG bicycles." (*Id.*). According to Mr. Campbell, CSG advertised its use of AIM cycling forks in its catalogues, and "AIM insured CSG for the use of its products for well over a decade." (*Id.* at 9).

Christopher Peck, CSG's former Vice President of Research and Development, has also submitted a declaration. (*Id.* at 32-33). Mr. Peck states, under penalty of perjury, that CSG employees worked directly with AIM employees in designing and testing cycling forks for CSG bicycles, and that AIM employees travelled to CSG's facility in Bedford, Pennsylvania, to facilitate this collaboration. (*Id.* at 33).

## II. Procedural Background

Plaintiffs commenced this action on March 14, 2018, in New York State Supreme Court, Monroe County. (Dkt. 1-2). On April 30, 2018, AIM, with CSG's consent, removed the matter to this Court based on diversity of citizenship. (Dkt. 1).[1]

AIM filed an Answer to the Complaint on May 10, 2018 (Dkt. 6), and CSG/Cannondale filed an Answer on May 16, 2018 (Dkt. 10). The Court referred the matter to United States Magistrate Judge Marian W. Payson for supervision of all pretrial matters excluding dispositive motions (Dkt. 8), and Judge Payson entered a case management order on June 13, 2018 (Dkt. 21).

---

[1] On July 18, 2019, the Court issued an Order to Show Cause, explaining that AIM had failed to adequately allege diversity of citizenship in its Notice of Removal. (Dkt. 52). In response, AIM filed an Amended Notice of Removal that clarifies its corporate status and citizenship, and adequately pleads subject matter jurisdiction. (Dkt. 56).

However, before factual discovery began, AIM filed a motion for summary judgment (Dkt. 24), arguing that the undisputed facts demonstrate the Court lacks personal jurisdiction over it. Plaintiffs and CSG both opposed AIM's motion (Dkt. 28; Dkt. 29), and Plaintiffs filed a cross-motion for jurisdictional discovery (Dkt. 32), in which CSG later joined (Dkt. 35).

AIM filed reply papers in further support of its motion for summary judgment on October 10, 2018. (Dkt. 36; Dkt. 37). Among other arguments, AIM contended that CSG lacks standing to oppose its motion for summary judgment because CSG has not asserted a cross-claim against AIM. (Dkt. 36 at 5-6).

On November 5, 2018, CSG filed a motion for leave to amend its Answer to include three cross-claims against AIM. (Dkt. 39). AIM filed opposition papers on November 27, 2018 (Dkt. 45), and CSG filed its reply on December 4, 2018 (Dkt. 46). Plaintiffs have indicated they do not oppose CSG's motion for leave to amend. (Dkt. 42).

On February 8, 2019, CSG filed a motion for leave to file a third-party complaint against MSIG Mingtai Insurance Co., LTD, MSIG Holdings (Americas), and Mitsui Sumitomo Marine Management (USA). (Dkt. 47). On February 13, 2019, Plaintiffs filed a response indicating that they do not oppose CSG's motion for leave to file a third-party complaint. (Dkt. 49). AIM did not file any response to CSG's motion for leave to file a third-party complaint.

On July 22, 2019, CSG filed a letter indicating that it wishes to withdraw: (1) its opposition to AIM's motion for summary judgment; (2) its papers joining in Plaintiffs'

cross-motion for jurisdictional discovery; (3) its motion for leave to file an amended answer with cross-claims; and (4) its motion for leave to file a third-party complaint. (Dkt. 53).

## DISCUSSION

I. **CSG's Request to Withdraw its Motions and Other Submissions**

The Court considers as an initial matter CSG's request to withdraw its pending motions, as well as its opposition to AIM's motion for summary judgment. With respect to CSG's request to withdraw its motions for leave to file an amended answer and for leave to file an amended complaint, the Court finds that no prejudice to any party will result from the withdrawal of these motions, and accordingly grants the request. *See Adams v. Loreman*, No. 8:07-CV-00452 LEK, 2012 WL 555095, at *3 (N.D.N.Y. Feb. 21, 2012) ("Leave to withdraw a motion without prejudice may be granted in the absence of a showing of prejudice to other parties."); *see also Harris v. Butler*, 961 F. Supp. 61, 62 (S.D.N.Y. 1997) ("Because the withdrawal of plaintiff's motion will not prejudice any party, plaintiff's request to withdraw his motion is granted.").[2]

Turning to CSG's request to withdraw its opposition to AIM's motion for summary judgment and its joinder in Plaintiffs' cross-motion for jurisdictional discovery, to the extent CSG no longer wishes to seek affirmative relief from the Court in these regards, it is permitted to withdraw its requests. However, the Court will not permit CSG to withdraw

---

[2] CSG has not specified whether it seeks to withdraw its submissions with or without prejudice. The Court has treated the request as one for withdrawal without prejudice, rather than presume that CSG intended to foreclose the possibility of seeking leave to amend or to file a third-party complaint in the future.

the declarations and accompanying exhibits it submitted in opposition to AIM's motion for summary judgment. (*See* Dkt. 28). Those declarations were sworn under penalty of perjury and constitute important, relevant evidence that this Court is free to consider in deciding AIM's motion to dismiss for lack of personal jurisdiction. *See, e.g., Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 737 n.1 (S.D.N.Y. 2013) ("On a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the Court may look beyond the four corners of the complaint and consider all pleadings and accompanying affidavits and declarations, while still resolving all doubts in plaintiff's favor." (quotation and alteration omitted)).

"A corollary to the principle that a party is expected to submit, at the time a motion is filed, all the materials that it wishes the Court to consider is the notion that a party obviously [should] not submit materials that it did not wish the Court to consider." *In re Repetitive Stress Injury Litig.*, 165 F.R.D. 367, 374 (E.D.N.Y. 1996) (denying request to withdraw affidavit submitted in opposition to pending motions). It would be highly prejudicial to Plaintiffs to permit CSG, after the completion of briefing, to withdraw relevant factual information regarding the pending motions, and the Court will not do so.

## II. AIM's Motion for Summary Judgment and Plaintiffs' Cross-Motion for Jurisdictional Discovery

### A. Legal Standard

#### 1. Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

### 2. Personal Jurisdiction

In federal court, upon challenge by the defendant, the plaintiff bears the burden of demonstrating that personal jurisdiction exists. *See Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 196 (2d Cir. 1990). The Second Circuit has explained:

> [T]he nature of the plaintiff's obligation varies depending on the procedural posture of the litigation. Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith . . . legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations. After discovery, the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant.

*Id.* at 197. "Where . . . pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary, jurisdictional discovery should be granted." *Badilla v. Nat'l Air Cargo, Inc.*, No. 12-CV-1066A, 2013 WL 5723324, at *11 (W.D.N.Y. Oct. 21, 2013) (quotation and original alterations omitted).

"In general, a 'district court's personal jurisdiction is determined by the law of the state in which the court is located.'" *Mrs. U.S. Nat'l Pageant, Inc. v. Miss U.S. Org., LLC*, 875 F. Supp. 2d 211, 219 (W.D.N.Y. 2012) (quoting *Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010)). "There are two ways that New York exercises personal jurisdiction over non-residents: general jurisdiction pursuant to [New York Civil Practice Law and Rules ("CPLR") 301] . . . or specific jurisdiction pursuant to [CPLR 302]." *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 798 (S.D.N.Y. 2015) (quotation marks and citation

omitted), *aff'd*, 660 F. App'x 43 (2d Cir. 2016). "Specific jurisdiction is available when the cause of action sued upon arises out of the defendant's activities in a state. General jurisdiction, in contrast, permits a court to adjudicate any cause of action against the . . . defendant, wherever arising, and whoever the plaintiff." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). "If personal jurisdiction exists under the forum state's laws, the district court must then determine if the exercise of such jurisdiction complies with federal due process requirements." *Gaymar Indus.*, 2007 WL 894217, at *3 (citing *Metro Life Ins.*, 84 F.3d at 567).

B. **Jurisdictional Discovery is Warranted in this Case**

In opposing AIM's motion for summary judgment, Plaintiffs have argued that, at a minimum, additional discovery is required to assess whether this Court has personal jurisdiction over AIM pursuant to CPLR 302(a)(3). The Court agrees.

CPLR 302(a)(3) provides that a court may exercise personal jurisdiction over a non-domiciliary who:

> commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenues from interstate or international commerce.

*Id.* AIM contends that the requirements of CPLR 302(a)(3)(ii) have not been met in this case because Plaintiffs have not alleged that "AIM expected or should have expected its business activities to have consequences in New York" or that "AIM derives substantial revenue from interstate or international commerce." (Dkt. 24-5 at 10-11). This argument

omitted), *aff'd*, 660 F. App'x 43 (2d Cir. 2016). "Specific jurisdiction is available when the cause of action sued upon arises out of the defendant's activities in a state. General jurisdiction, in contrast, permits a court to adjudicate any cause of action against the . . . defendant, wherever arising, and whoever the plaintiff." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). "If personal jurisdiction exists under the forum state's laws, the district court must then determine if the exercise of such jurisdiction complies with federal due process requirements." *Gaymar Indus.*, 2007 WL 894217, at *3 (citing *Metro Life Ins.*, 84 F.3d at 567).

B. **Jurisdictional Discovery is Warranted in this Case**

In opposing AIM's motion for summary judgment, Plaintiffs have argued that, at a minimum, additional discovery is required to assess whether this Court has personal jurisdiction over AIM pursuant to CPLR 302(a)(3). The Court agrees.

CPLR 302(a)(3) provides that a court may exercise personal jurisdiction over a non-domiciliary who:

> commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenues from interstate or international commerce.

*Id.* AIM contends that the requirements of CPLR 302(a)(3)(ii) have not been met in this case because Plaintiffs have not alleged that "AIM expected or should have expected its business activities to have consequences in New York" or that "AIM derives substantial revenue from interstate or international commerce." (Dkt. 24-5 at 10-11). This argument

is incorrect. Plaintiffs' Complaint expressly alleges both these facts. (*See* Dkt. 1-2 at 15-16).

Moreover, Plaintiffs and CSG have submitted evidence to the Court tending to support these allegations. In particular, the evidence submitted by Plaintiffs and CSG, read in the light most favorable to Plaintiffs, indicates that AIM worked closely with CSG to design and manufacture cycling forks, knowing that those cycling forks would be incorporated into bicycles that would be sold by CSG within the state of New York. In addition, the evidence submitted by Plaintiffs and CSG demonstrates that AIM's products are sold worldwide, rendering it likely that AIM in fact has substantial revenues from international commerce. Significantly, in moving for summary judgment prior to any discovery having been taken, AIM has not presented any evidence regarding its revenues from which the Court could conclude that it does not derive substantial revenue from interstate or international commerce. Under these circumstances, the Court cannot find as a matter of law that the requirements of CPLR 302(a)(3)(ii) are not met.

The Court further finds that there are unresolved factual questions regarding whether AIM has contacts with the State of New York sufficient to satisfy the requirements of due process. "In order for jurisdiction to comport with due process, the defendant must have sufficient minimum contacts with the forum state, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *RegenLab USA LLC v. Estar Techs. Ltd.*, 335 F. Supp. 3d 526, 543 (S.D.N.Y. 2018) (quotation omitted). As relevant to this case, minimum contacts sufficient to support the existence of specific

jurisdiction "can be established through a stream of commerce theory." *Id.* (quotation omitted); *see also Gary Null & Assocs. Inc. v. DNE Nutraceuticals Inc.*, No. 18-CV-7169 (JSR), 2018 WL 6991065, at *4 (S.D.N.Y. Dec. 20, 2018) ("The Supreme Court has expressly held that '[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.'" (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980)).

AIM contends that the plurality opinion in *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011), governs this matter and demonstrates that specific jurisdiction cannot exist merely because it knew its products would be purchased by New York consumers. However, as courts in this Circuit have explained, because there was no majority opinion in *Nicastro*, the controlling law is the "narrowest opinion" from that case—namely, Justice Breyer's concurrence, which made no substantive change to the Supreme Court's precedent. *See RegenLab*, 335 F. Supp. 3d at 544 ("As the narrowest opinion, Justice Breyer's holding—that the law remains the same after [*Nicastro*]—controls.") (quotation omitted); *see also In re Welspun Litig.*, No. 16 CV 6792 (VB), 2019 WL 2174089, at *10 (S.D.N.Y. May 20, 2019) (explaining that the stream of commerce theory survived *Nicastro* because there was no majority opinion in that case, and courts are therefore obliged to follow Justice Breyer's concurrence). Accordingly, AIM's arguments made in reliance on the *Nicastro* plurality opinion are misplaced.

The Court further finds that there are factual questions related to the fairness of requiring AIM to litigate this matter in New York. Once a court is satisfied that minimum contacts exist in a given case, it must "also consider[] whether the assertion of jurisdiction comports with traditional notions of fair play and substantial justice—that is, whether it is reasonable under the circumstances of a particular case." *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 243 (2d Cir. 1999) (quotations omitted). It is axiomatic that the Court cannot assess the reasonableness of an exercise of jurisdiction under the particular circumstances of a matter where, as here, the precise details of those circumstances are unclear. In other words, the unresolved factual issues that prevent the Court from determining whether the minimum contacts standard has been met also prevent the Court from properly assessing reasonableness at this stage of the proceedings.

In this Circuit, jurisdictional discovery is permitted where a plaintiff has "made a sufficient start toward establishing personal jurisdiction," such that it appears there may be a colorable jurisdictional claim. *Hollins v. U.S. Tennis Ass'n*, 469 F. Supp. 2d 67, 70 (E.D.N.Y. 2006) (quotation omitted). For the reasons set forth above, the Court finds that standard met here. Accordingly, the Court grants Plaintiffs' cross-motion for jurisdictional discovery and denies AIM's motion for summary judgment without prejudice to renewal upon completion of that discovery.

Because this matter has been referred to Judge Payson for supervision of discovery, the Court will not set forth specific parameters regarding the conduct of jurisdictional discovery at this time. Judge Payson has entered a case management order setting forth

deadlines for the completion of the various stages of discovery. (*See* Dkt. 21). If the parties believe that any adjustments to these deadlines are needed in light of this Decision and Order, they are instructed to seek such an adjustment from Judge Payson in accordance with her practices and procedures.

## **CONCLUSION**

For the foregoing reasons, the Court grants Plaintiffs' cross-motion for jurisdictional discovery (Dkt. 32) and denies without prejudice to renewal AIM's motion for summary judgment (Dkt. 24). The Court grants CSG's request to withdraw its motion for leave to file an amended answer (Dkt. 39) and its motion for leave to file a third-party complaint (Dkt. 47), and will terminate those motions.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: August 6, 2019
Rochester, New York